ON PETITION FOR REHEARING.
Cunningham, Judge.
In its petition on rehearing appellant vigorously insists upon the contention made in its behalf in the original brief that its title had been perfected under and by virtue of sec. 4090 R. S. In the original opinion we ruled against this contention on the authority of Sayre v. Sage, 47 Colo. 568. Counsel for appellant, in his brief on rehearing, insists that the Sayre case is not authority, contending that that case turned upon original sec. 6 of the Act of 1893, or *595 see. 4089 R. S., instead of original sec. 7, Sec. 4090 R. S. We still are of opinion that the rule in the Sayre case is applicable and controlling’, but inasmuch as the question has been presented on oral argument in cases later to be decided and involving large tracts of land, we feel justified in presenting in a supplemental opinion our views somewhat fully on the points raised and discussed by counsel for appellant in his original brief and in his brief on motion for rehearing in this case and in oral arguments in other cases later to be determined.
The defendant, The Empire Ranch and Cattle Company, on January 23rd, 1901, took an assignment from the county of Washington of a tax certificate to certain lands, which certificate had theretofore and some time during October, 1896, been issued to the county by the county treasurer upon the sale of lands for delinquent taxes for the year 1895. This tax certificate having been assigned to it by the county clerk (apparently in virtue of a resolution adopted by the board of county commissioners who were attempting to proceed under sec. 3926i M. A. S., (Vol. 3), the defendant presented the same to the county treasurer on the 18th day of February, 1901, and received a tax deed for the land' embraced in the certificate, and the deed was recorded on February 19, 1901. We thus have in the record the date of the assignment of the tax certificate and the name of the officer assigning the same, viz., the county clerk. This officer appears to have assigned the certificate more than three years after the date of its issue. The resolution of the board of county commissioners, which appellant introduced in evidence, nowhere authorizes or empowers the county clerk to *596 make this assignment, at least not in terms, as far as we can gather from the abstract or bill of exceptions, and it may well be doubted whether under the ruling in Monson v. Gillette, 51 Colo. 147, 116 Pac. 1055, and Lambert v. Murray, 52 Colo. 156; 120 Pac. 415-20, the attempted assignment of the certificate of purchase by the county clerk was not fatally defective, and therefore and for this additional reason the tax deed void. At the time the aforesaid tax deed was taken by defendant and put of record, viz., February 19, 1901, the taxes for the year 1900 on the land included in the certificate which the county had attempted to assign appellant were then past due. Promptly after recording its deed, the defendant paid the taxes for the year 1900 on the land included in the deed and the aforesaid certificate of purchase. Thereafter and before this suit was instituted, defendant paid the taxes for the years 1901 to 1906 inclusive, each of said payments being made in apt time. The suit was begun on July 10, 1907. Thereafter and pending the suit, the defendant also paid the taxes for the year 1907, paying them in 1908.
1. We may not have stated the facts with absolute accuracy, but we think the statement, even if inaccurate, is not at all prejudicial to either party, and serves the purpose of bringing clearly into view the question presented for our determination, viz., can the first payment made by the defendant after it had recorded its tax deed, that is, the taxes for the year 1900, (which were paid in February, 1901, after the recording of the deed) be considered and counted as one of the seven payments provided for in Sec. 4090 R. S. This section reads as follows: “Whenever a person having color of title, made in *597 good faith, to vacant and unoccupied lands, shall pay all taxes legally assessed thereon for seven successive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land to the extent and according to the purport of his or her paper title. All persons holding under such taxpayer, by purchase, devise or descent, before'said seven years shall have expired, and who shall' continue to pay the taxes for the aforesaid, shall be entitled to the benefit of this section. Provided, however, if any person, having a better paper title to said vacant and unoccupied land, shall during the said term of seven years, pay the taxes assessed on said land for any or more years during the said term of seven years, then and in that case such person seeking title under claim of taxes paid, his heirs and assigns, shall not be entitled to the benefit of this section.” (L. ’93, p. 328, § 7.)
Defendant’s contention, which we shall state substantially in the language employed by its counsel in his original brief, is that under said Sec. 4090r “the payment of taxes is the leading feature, and the statute says whenever that is done seven successive times by a party ‘having color of title’ then the bar of the statute is complete.
Deferring to the preceding section, 4089, which applies to the payment of taxes for seven years by one in actual possession under claim and color of title made in good faith, and which we need not quote, counsel for the defendant says in his brief:
“The idea of a period, or term, pervades the first section. The idea of repetition of the payment of taxes assessed is prominent in the other. In the first section the bar of the statute is complete at the *598 end of the period when ‘possession and payment’ shall have continued concurrently seven years, while, in the second section (4090 here under consideration) the bar is complete whenever the seventh payment is made. * * * In the second section the payments are several distinct entities producing results ‘whenever’ the last one is completed.”
And further, counsel says: “Being vacant and unoccupied, the payment of taxes was the only visible assertion of ownership. Seven successive times in that number of years the party having color of title by the payment of taxes thereon, notified the previous owner in a manner which could be ascertained, that he claimed that land, ’ ’ meaning the land in controversy.
We find this further statement in counsel’s brief: “The legislature entirely omitted in the second section all references to possession, or any period of time.”
We have attempted to state fully the contention of counsel for the defendant, using, as nearly as practicable, his own language, and we shall now proceed to a consideration of the same.
As we have seen, defendant’s tax deed was recorded in February, 1901. This action was begun on July 10, 1907, hence, at the time of the institution of this action, defendant had had color of title for considerably less than seven years. We cannot accept counsel’s view of sec. 409C), for, as we read it, the legislature did not omit all references to “any period of time”. In the last sentence of the section it is provided that “if any person having a better paper title to said vacant and unoccupied land shall cluring■ the said term of seven years, pay the taxes *599 assessed on said land for any one or more years during the said term of seven years,”' the running of the statute is thereby arrested. And in the preceding sentence it is said: “All persons holding-under such taxpayer, by purchase, devise or descent, before said seven years shall have expired, and who shall continue to pay the taxes as aforesaid so as to complete the payment of taxes for the aforesaid shall be entitled to the benefit of this section.” Thus, at least three times, the legislature does make reference to a period of time, and the period of time is always seven years. We think that sections 4089 and 4090 are in pari materia, and must be read and construed together. The only substantial difference between the two sections is that in 4089 possession is required, while in 4090 the land must be vacant and unoccupied. But whether we are correct in this or not, certainly the last two sentences of sec. 4090 must be construed in connection with the first sentence, on which defendant bases its entire argument that it may complete the bar of the statute by paying the taxes for seven successive years, no matter when such payments be made. It is not necessary for us to,-and we do not, decide that the seven payments of taxes provided for in sec. 4090 must be payments of taxes levied or assessed after the color of title has been obtained. All we determine is that taxes that have been assessed and which are due and payable at the time the color of title is taken cannot thereafter be paid and counted as one of the seven payments required by the statute, and that seven full years must elapse-between the first payment of taxes on vacant and unoccupied land and the institution of the suit to recover the land. In other words, to *600 establish title by limitations, under section 4090 R. S., three things are necessary: First, color of title obtained in good faith; second, payment of taxes for the full period of seven years by the holder of such Ook)r of title, or by someone acting for him; third, these two things must exist concurrently without interruption, and must continue throughout the seven years. Goss v. Wheeler, 229 Ill. 272.
That seven full years must elapse between the date of the first payment of taxes and the commencement of the suit is sustained by a long line of decisions made by the supreme court of Illinois, from 'which we borrowed our statute. Knight v. Lawrence, 19 Colo. 431.
The following Illinois cases were decided before 1893, the date of the enactment by our own legislature of Section 4090: Stearns v. Gittings, 23 Ill. 387; Dickinson v, Breeden, 30 Ill. 279; Clark v. Lyon, 45 Ill. 388; McConnel v. Konepel, 46 Ill. 519; Lyman v. Smilie, 87 Ill. 259; Holbrook v. Debo, 94 Ill. 327; Iberg v. Webb, 96 Ill. 415; Smith v. Prall, 133 Ill. 308.
Illinois has repeatedly, since 1893, the date of the adoption of our statute, reaffirmed her earlier rulings, but it is not necessary to cite all the later cases.
Washington, having a similar, if not an identical statute, in Tremmel v. Mess, 89 Pac. 842, follows the decisions in Illinois, as does also South Dakota, in Bennett v. Moore, 99 N. W. 855.
In the Bennett case, the South Dakota supremo court uses this language:
“The statute in effect provides for a forfeiture of the property of the former owner * •• and *601 should therefore be strictly construed. It would seem essential that the party paying the taxes and claiming the benefit of the statute should have color of title in good faith during all of the ten years in which the taxes are being assessed and paid, and that the two must exist together.”
The italics are ours. The only distinction observable between the South Dakota statute and our own is that the period in South Dakota is ten years instead of seven. See also Sibley v. England (Ark.), 11 S. W. 820; Gaither v. Gage (Ark.), 100 S. W. 80.
2. On rehearing counsel for appellant again with much vigor renews his contention that no title passes by a second deed of trust given subject to a prior deed of trust, and that only a bare right to redeem is conveyed by a trustee’s deed based on the foreclosure of such second deed of trust. To support this contention much reliance is placed on Stephens v. Clay, 17 Colo. 489. A casual reading of the opinion in the Stephens case discloses that Judge Helm, who wrote the same, made no distinction between the right to redeem, the equity of redemption and the equitable title, and specifically states that the equitable title remains in the trustor until divested by sale under foreclosure proceedings regularly brought. Mr. Warvelle in his late work on ejectment, (1905, § 142) thus defines the relation of the mortgagor to the title of the land on which he has given a mortgage:
“Notwithstanding that by the common law the legal title and estate in the mortgaged lands passed to and became vested in the mortgagee upon the execution of the mortgage, the principle was early announced in the American cases, that as to all the *602 world, except the mortgagee, the freehold remained in the mortgagor in the same condition in which it was prior to the mortgage. Being thus clothed with all his rights as a freeholder, as to all persons other than the mortgagee or his assigns, it followed that he might maintain any action, for an injury to the inheritance or possession, and the mere fact that the legal title was in the mortgagee could not be urged as a defense. Where, as is generally the case, the mortgage is regarded as a mere lien, the right to recover possession from a stranger cannot be questioned, as this is one of the attributes of ownership and is an inseparable right of property.”
In the case of Adams v. Shirk, 117 Fed. 801-5, this language appears:
“The legal title of the mortgagee is recognized only for the benefit of the holder of the mortgage debt. Against all other persons the mortgagor is the legal owner of the estate.”
See also Lewis v. Hamilton, 26 Colo. 263.
In this respect there appears to be no distinction between a trustor and a mortgagor. McGovney v. Gwillim, 16 Colo. App. 284-5; Seaman v. Bisbee, 163 Ill. 91.
It appears that several of the tax deeds offered in evidence by appellant described tracts of land not in any way involved in this suit. The judgment of the trial court declared all of the aforesaid deeds void and decreed.their cancelation. The trial court was without authority to extend the effect of its decree beyond the lands described in the complaint, and to the extent it attempted so to do, its decree is hereby modified.
Discovering no reason other than that last above *603 stated for modifying the original opinion handed down in this ease, the rehearing is denied, and the decree of the trial court as modified will stand affirmed. '
Decided July 8, A. D. 1912.
Rehearing denied October 14, A. D. 1912.

Rehearing denied.

Morgan, Judge, not participating.